IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JASON L. WESTERFIELD,           )    CASE NO.  1:19-cv-1733
                                )
         Petitioner,           )
                                )    JUDGE SARA LIOI
      vs.                     )
                                )
WARDEN BRANDESHAWN HARRIS,   )    MAGISTRATE JUDGE
                                )    JONATHAN D. GREENBERG
         Respondent.        )
                                )
                                )    **REPORT & RECOMMENDATION**

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the

Petition of Jason L. Westerfield ("Westerfield" or "Petitioner"), for a Writ of Habeas Corpus filed

pursuant to 28 U.S.C. § 2254 (Doc. No. 1), the Answer/Return of Writ (Doc. No. 9) and Westerfield's

Traverse (Doc. No. 14).  Westerfield is in the custody at the Trumbull Correctional Institution pursuant to

a judgment of conviction issued by the Crawford County Court of Common Pleas for burglary, Case No.

17-CR-0235.  For the following reasons, the undersigned recommends that the Petition be DISMISSED

in part and DENIED in part.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a

state court, factual determinations made by state courts are presumed correct unless rebutted by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th

Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The Ohio Court of Appeals for the

Third Appellate District summarized the facts underlying Westerfield's conviction as follows:

{¶ 2} On June 24, 2017, Crystal Caudill ("Caudill") picked up Christopher Alex Brooks
("Brooks") and the two purchased beer and Crown Royal together to drink that evening at
Caudill's residence. Brooks and Caudill had a sexual relationship in the past and Brooks

1

occasionally did some work on Caudill's house, though Caudill indicated the sexual relationship had essentially ended by June 24. Brooks and Caudill began drinking at Caudill's residence in the late afternoon/early evening hours and continued drinking later into the night.

{¶ 3} During the night, Westerfield began contacting Caudill. Westerfield and Caudill had a sexual relationship, though they did not see each other that often and they both were seeing other people. Caudill indicated to Westerfield that she had "company," which irritated Westerfield.

{¶ 4} Westerfield sent Caudill a number of messages stating that he was coming to Caudill's residence and that he was going to hurt whoever was there with her. When Westerfield arrived at Caudill's residence, Caudill went outside to meet him and told him not to go inside. Westerfield entered the residence regardless, though Caudill tried to stop him, and he confronted Brooks, who had never met Westerfield.

{¶ 5} According to Brooks, Westerfield struck him multiple times and pulled a knife on him, but Caudill stepped between them and was able to get Westerfield to give her the knife. Brooks indicated that he was then going to leave, but it was a long walk so he grabbed his bottle of Crown Royal to take with him. He claimed that Westerfield took the bottle from him and said that the bottle was going to stay but Brooks had to leave. Brooks claimed that Westerfield then struck him two additional times and eventually kicked or stomped on his leg, breaking it. Afterward, Westerfield left Caudill's residence. Brooks insinuated that Westerfield left with his bottle of Crown Royal.

{¶ 6} Approximately an hour after the incident, police were called. Brooks initially told police that he fell and that was how he broke his leg, then he later changed his story saying that he was "jumped" by three people. Brooks went on to eventually state later that Westerfield alone had come into Caudill's residence, hit him multiple times and broke his leg before leaving. Brooks stated that he initially said he fell because Caudill was afraid of Westerfield and because Brooks was on probation and drinking was a violation.

{¶ 7} Caudill also told the police multiple stories regarding what happened, indicating first that a man named "Doug Rowland" had been the one to hurt Westerfield [sic]. Later, after inquiring as to whether the police could protect her, Caudill indicated that Westerfield had been the one to come to her house. However, at trial, Caudill testified that while she did not give Westerfield permission to go into her house, she did not witness any of the purported violence because she was in the process of containing her dogs. Caudill did acknowledge that after Westerfield was incarcerated and awaiting trial, Caudill had spoken to him on the phone over 180 times, totaling in excess of 14 hours of conversation.

{¶ 8} Westerfield was initially indicted on July 11, 2017, for Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, and Aggravated Robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree.[] The case was scheduled to proceed to a jury trial on September 7, 2017; however, on September 6, 2017, the day before trial, the defense filed a motion *in limine* seeking to prevent the State from presenting evidence related to the jail house calls that had been made from Westerfield to Caudill. The defense indicated that it needed additional time to review the recordings.

2

***

{¶ 10} On September 12, 2017, a second indictment was filed asserting another charge arising out of the June 24, 2017 incident. It alleged one count of Aggravated Burglary in violation of R.C. 2911.11(A)(1) and (A)(2), a felony of the first degree.[] The two indictments against Westerfield were subsequently consolidated for trial.

***

{¶ 13} The trial then commenced with the State presenting the testimony of Brown and Caudill. At the conclusion of their testimony, the State rested. Although the defense cross-examined the witnesses presented, the defense did not call any witnesses. The matter was submitted to the jury, with the State requesting a lesser-included offense instruction for Burglary on the Aggravated Burglary charge.

{¶ 14} The jury returned not guilty verdicts for Aggravated Robbery and Felonious Assault, and found Westerfield guilty of the lesser included offense of Burglary. Westerfield was sentenced to serve 7 years in prison on the Burglary conviction. A judgment entry memorializing his sentence was filed October 23, 2017. It is from this judgment that Westerfield appeals, asserting the following assignments of error for our review.

Doc. No. 9-1 (Ex. 15); *State v. Westerfield*, 2018-Ohio-2139, ¶¶ 2-14, 2018 WL 2670943 (Oh.Ct.App. June 4, 2018).

## II. Procedural Background

### A. Trial Court Proceedings

On July 11, 2017, the Crawford County Grand Jury issued an indictment charging Westerfield with one count of felonious assault, O.R.C. § 2903.11(A)(1), and one count of aggravated robbery, O.R.C. § 2911.01(A)(3).  Doc. No. 9-1 (Exhibit 1, Case No. 17-CR-0158).  Westerfield, through counsel, pleaded not guilty.  Doc. No. 9-1 (Ex. 2).

On September 6, 2017, the day before Westerfield's trial, the trial court held a hearing regarding a motion *in limine* during which the parties agreed to a continuance of the trial to review new evidence involving taped jail-house telephone conversations.  Doc. No. 9-1 (Ex. 58).  Westerfield signed a waiver of speedy trial time and the trial was continued to on or before October 19, 2017.  Doc. No. 9-1 (Ex. 3).

3

On September 12, 2017, the Crawford County Grand Jury issued a second indictment charging Westerfield with one count of aggravated burglary, O.R.C. § 2911.11 (A)(1)&(2), arising under the same incident in case number 17-CR-0158.  Doc. No. 9-1 (Ex. 4, Case No. 17-CR-0235).  Westerfield, through the same counsel, pleaded not guilty.  Doc. No. 9-1 (Exhibit 5).

On September 14, 2017, Westerfield, through counsel, filed a revocation of speedy trial waiver in Case No. 17-CR-0158 and requested that the matter be set for jury trial immediately.  Doc. No. 9-1 (Ex. 6).  On September 18, 2017, the trial court granted the state's motion to consolidate the two cases for trial.  Doc. No. 9-1 (Ex. 8).

On October 19, 2017, prior to the start of trial, Westerfield made an oral motion to dismiss the case, arguing that he was denied his right to a speedy trial.  Doc. No. 9-1, pp. 589-591 (Ex. 59).  The trial court denied Westerfield's motion.  Doc. No. 9-1, p. 591.  On October 20, 2017, the jury found Westerfield not guilty of felonious assault and aggravated robbery in case number 17-CR-0158 and guilty of the lesser included offense of burglary in case number 17-CR-0235.  Doc. No. 9-1 (Ex. 9).  The trial court sentenced Westerfield that day to seven years in prison.  Doc. No. 9-1 (Ex. 10).

**B. Direct Appeal**

On November 9, 2017, Westerfield, through new counsel, filed a notice of appeal in the Third District Court of Appeals, Crawford County, Ohio.  Doc. No. 9-1 (Ex. 11).  In his brief, he raised the following assignments of error:

1. The trial court erred in overruling Appellant's motion to dismiss for violation of his speedy trial rights.

2. The Appellant was denied his constitutional right to effective assistance of counsel when the appellant's trial counsel failed to protect Appellant's rights at trial.

Doc. No. 9-1, p. 34 (Ex. 12).  The state filed an opposition brief and Westerfield replied.  Doc. No. 9-1 (Exs. 13, 14).  On June 4, 2018, the Ohio Court of Appeals affirmed the trial court's judgment.  Doc. No.

4

9-1 (Ex. 15).

On June 13, 2018, Westerfield, *pro se*, filed a motion for reconsideration, which the court denied. Doc. No. 9-1 (Exs. 16, 18).

On August 10, 2018, Westerfield, *pro se*, appealed to the Ohio Supreme Court. Doc. No. 9-1 (Ex. 19). In his memorandum in support of jurisdiction, Westerfield presented the following propositions of law:

> 1. The trial court erred in overruling appellant motion to dismiss for violation of his speedy trial rights violation of appellant United States Constitutional Rights Amendment, 5, 6, and 14.
>
> 2. The appellant was denied his constitutional right to effective assistance of counsel when the appellant trial counsel failed to protect appellant right at trial violation of appellant United States Constitutional Right Amendment, 6 and 14.

Doc. No. 9-1, p. 133 (Ex. 20). On October 24, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. No. 9-1 (Ex. 22).

**C. Trial Court motions**

Meanwhile, on October 24, 2017, Westerfield, *pro se*, filed a motion for new trial pursuant to Crim.R. 33(A) in the trial court, alleging he was prejudiced by his attorney and denied a fair trial because defense counsel refused to call two witnesses and introduce evidence at trial. Doc. No. 9-1 (Ex. 23). On October 26, 2017, the trial court denied Westerfield's motion. Doc. No. 9-1 (Ex. 25). Westerfield did not appeal.

On October 26, 2017, Westerfield, *pro se*, filed an "appeal of motion to dismiss for violation of speedy trial" in the trial court. Doc. No. 9-1 (Ex. 26). The same day, the trial court denied Westerfield's motion for the reasons placed on the record during the hearing held prior to Westerfield's trial. Doc. No. 9-1 (Ex. 27).

**D. Application to Reopen Appeal pursuant to App. R. 26(B)**

On July 27, 2018, Westerfield, *pro se*, filed an application to reopen his direct appeal in the Ohio

5

Court of Appeals, alleging that he was denied the effective assistance of appellate counsel as a result of appellate counsel's failure to raise the following assignments of error:

> 1. [T]he trial courts violation of Mr. Westerfield's rights to due process under the Ohio and United States Constitution when it instructed the jury that they "cannot return a verdict of not guilty for both" in reference to the Aggravated burglary charge and the lesser included offense of burglary charge.

> 2. [T]he trial courts violation of Mr. Westerfield's rights to due process under the Ohio and United States Constitution with its improper jury instruction.

> 3. [I]neffective assistance of trial counsel on the grounds that counsel failed to object to the improper jury instruction and failure to "specify" the speedy trial violation towards the "lesser included offense" of burglary only.

> 4. [A]ppellants conviction is not supported by sufficient evidence and also against the manifest weight of the evidence.

> 5. [T]he "lack of a specific charge" in the verdict form submitted to the jury for deliberations [was error]. (ORC. 2911.12(A)(1) or (2))

> 6. [T]he "lack" of the findings of the court within the sentencing entry [was error]. (ORC. 2911.12(A)(1) or (2))

> 7. [T]he trial courts failure to instruct the jury on all of the elements of the lesser included offense of burglary.

Doc. No. 9-1, p. 199 (Ex. 28). He also filed a Motion to Amend his Application to correct a citation. Doc. No. 9-1 (Ex. 29). On September 20, 2018, the appellate court denied Westerfield's amended 26(B) Application. Doc. No. 9-1 (Ex. 31).

On October 29, 2018, Westerfield, *pro se*, appealed to the Ohio Supreme Court. Doc. No. 9-1 (Ex. 32). In his memorandum in support of jurisdiction, he presented the same seven propositions of law as above. Doc. No. 9-1, 276 (Ex. 33). On January 23, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. No. 9-1 (Ex. 35).

**E. Post-Conviction motions**

On October 29, 2018, Westerfield, *pro se*, filed a motion for post-conviction relief pursuant to

6

R.C. 2953.21.  Doc. No. 9-1 (Ex. 36).  He alleged that the trial court incorrectly instructed the jury on the charge of aggravated burglary and the lesser included offense of burglary and that trial counsel failed to object to the jury instructions.  On November 13, 2018, Westerfield filed a motion to include an additional claim that he was denied a fair trial by an impartial jury because the jury verdict form and the sentencing entry failed to specify the subsection of burglary under which he was found guilty.  Doc. No. 9-1 (Ex. 37).  On January 10, 2019, the trial court denied Westerfield's motion, finding that the issues he raised were barred by the doctrine of *res judicata* because they had been raised and/or could have been raised on direct appeal.  Doc. No. 9-1 (Ex. 38).  Westerfield did not appeal.

On January 17, 2019, Westerfield, *pro se*, filed a motion to vacate his conviction alleging that his right to a speedy trial was violated.  Doc. No. 9-1 (Ex. 39).  On January 29, 2019, the trial court dismissed his motion to vacate, finding that it was a successive petition and, therefore, not permitted.  Doc. No. 9-1 (Ex. 40).  Westerfield did not appeal.

**F. Prior Federal Habeas Petitions**

On November 12, 2018, Westerfield filed a federal habeas petition in case number 1:18-CV-2725.  In his petition, he raised the following grounds for relief:

> **Ground 1:** Violation of my Constitutional right to a speedy trial. Violation of 5, 6 and 14th Amendment.
>
> **Supporting facts**: I was arrested June 24, 2017. I was indicted September 12, 2017 on Case No. 17-CR-0235, Aggravated Burglary. I was found guilty of a lesser included offense of Burglary on Case No. 17-CR-0235. I have been held in lieu of bond since my arrest.  Trial started: October 19-20, 2017.
>
> **Ground 2:** Denied my constitutional right to effective assistance of counsel. Violation of United States Constitution 6 & 14th Amendment. Failure to protect my rights at trial.
>
> **Supporting facts**: Trial counsel did not object to improper jury instruction from trial judge stating that they "cannot return a verdict of not guilty for both," in reference to the Aggravated Burglary and lesser included offense of Burglary charge. Failure to question witness in regards to the affidavit that was signed & notorized in his office that contradicted a statement the witness told police previously.

7

Doc. No. 9-1, pp. 385, 387 (Ex. 41).

On January 30, 2019, Westerfield, *pro se*, filed a second federal habeas petition in case number

1:19-CV-911.  Doc. No. 9-1 (Ex. 44).  In his petition, he raised the following grounds for relief:

**Ground One**: Ineffective assistance of appellate counsel for failure to raise as error the violation of my rights to due process.
**Supporting Facts**: The trial court violated my Constitutional rights to due process when the judge instructed the jury that they "cannot return a verdict of not guilty for both," in reference to the aggravated burglary charge and the lesser included offense of burglary charge. In violation of the Ohio and United States Constitution rights to due process.

**Ground Two**: Ineffective assistance of appellate counsel for failure to raise as error the violation of my rights to due process.
**Supporting Facts**: Violation of my constitutional rights to due process with the trial courts improper jury instruction. The trial judge included the address and declared it an occupied structure as defined by 2909.01 of the Ohio Revised Code to the reading of the statute during the jury instructions and not leaving this element, (essential) to be proven by the state beyond the jury's reasonable doubt.

**Ground Three**: Ineffective assistance of appellate counsel for failure to "specify" the speedy trial violation towards Case No. 17-CR-0235 only. Failure to object to the improper jury instructions.
**Supporting Facts**: The reasoning behind the trial courts decision to deny the speedy trial violation motion was based upon a pre-trial hearing on Case No. 17-CR-0158. Had counsel of been [sic] "specific" as to the speedy trial violation towards case no. 17-CR-0235 "only," the trial court would not of been able to answer back with the decision that they did. The aforementioned pretrial hearing was in regards to Case No. 17-CR-0158 only and was held six days prior to the filing of case no. 17-CR-0235.

**Ground Four**: Ineffective assistance of appellate counsel for failure to raise as error conviction is not supported by sufficient evidence and against the manifest weight of the evidence.
**Supporting Facts**: There was no indictment for the lesser included offense of burglary that I was found guilty of, the judge informed the jury of this charge during the jury instructions. He informed the jury that burglary was in violation of R.C. 2911.12(A)(1) or (2) and the same was submitted to the jury on the verdict form for deliberations. Wrong information from trial court caused the jury to lose their way. "With purpose to commit any criminal offense" element not met. Was found not guilty of the aggravated robbery and felonious assault charge.

**Ground Five**: Ineffective assistance of appellate counsel for failing to raise as error the "lack of a specific charge" in the verdict form submitted to the jury for deliberations. [Ohio Revised Code 2911.12(A)(1) or (2)]
**Supporting Facts**: There was no indictment for the lesser included offense of burglary that I was found guilty of, the judge informed the jury of this charge during the jury instructions saying that burglary was in violation of R.C. 2911.12(A)(1) or (2) and the same incorrect

rendition was submitted to the jury on the verdict form for deliberations. The trial court does not read the statute, inform on the elements or give any kind of instructions as to Ohio Revised Code 2911(A)(2). The trial courts rendition of Ohio Revised Code, 2911.12(A)(1) or (2) is erroneous and ambiguous.

**Ground Six**: Ineffective assistance of appellate counsel for failing to raise as error the "lack of a specific charge" in the findings of the court within the sentencing entry. [Ohio Revised Code 2911.12(A)(1) or (2)]
      **Supporting Facts**: The sentencing entry reads: the court finds that the defendant was guilty, by a jury verdict, of a count of burglary in violation of 2911.12(A)(1) or (2) a felony of the second degree." The Ohio Revised Code provides 2911.12(A)(1) as a section of burglary and 2911.12(A)(2) as another section of burglary. Both of these sections are different from one another and involve different elements. Both of these sections are to be considered separately and the jury is to be specific as to which charge their finding of guilt is attributed to. 2911.12(A)(1) or (2) is ambiguous and incorrect.

**Ground Seven**: Ineffective assistance of appellate counsel for failure to raise as error the trial courts failure to instruct the jury on all of the elements of the lesser included offense of burglary.
      **Supporting Facts**: At no time during the explanation of the jury instructions for the "lesser included offense" of burglary does the trial judge instruct as to the elements of burglary, or the Ohio Revised code or the degree of felony in regards to burglary.

Doc. No. 9-1, pp. 418, 423-424, 428, 430, 432, 434.

On July 29, 2019, Westerfield filed a motion requesting that the District Court treat his 2019 petition as an amendment to his 2018 petition.  Case No. 1:18-CV-2725, Doc. No. 24.  The Court granted Westerfield's motion and stated that it would construe the seven claims asserted in the 2019 petition as added to his 2018 petition and dismissed the 2019 petition.  Doc. No. 9-1 (Exs. 43, 46).

**H. Third State Petition for Post-Conviction Relief**

On December 23, 2019, Westerfield, *pro se*, filed a petition for postconviction relief in the trial court alleging a claim of ineffective assistance of trial counsel and citing new evidence.  Doc. No. 9-1 (Ex. 47).  On December 26, 2019, the trial court dismissed his petition, finding that it was a successive petition and, therefore, not permitted.  Doc. No. 9-1 (Ex. 48).

On January 23, 2020, Westerfield, *pro se*, appealed to the Ohio Court of Appeals.  Doc. No. 9-1 (Ex. 49).  In his brief, he raised the following assignment of error:

9

The trial Court erred in dismissing Appellant's petition for post-conviction relief based upon evidence dehors the record filed pursuant to O.R.C. 2953.21 when that Court found that it was a successive petition.

Doc. No. 9-1 (Ex. 50).  On April 27, 2020, the Ohio Court of Appeals affirmed.[1]

## I. Current Habeas Petition

On July 23, 2019, Westerfield, *pro se*, filed his current habeas petition.  Doc. No. 1.  In his

petition, he raised the following grounds for relief:

**Ground One**: The trial court violated Petitioner's rights to due process when it instructed the jury that they "cannot return a verdict of not guilty for both" in reference to the Aggravated Burglary and lesser included offense of Burglary charge.

**Supporting Facts**: The trial court violated Mr. Westerfield's rights to Due Process when the trial judge instructed the jury during the explanation of the verdict form that they "cannot return a verdict of not guilty for both," in reference to the Aggravated Burglary charge and the lesser included offense of Burglary charge. This is a directed verdict that violated the United States Constitution. The instruction was unfair as it prevented the jury from acquitting the Petitioner in light of findings of not guilty for all other charges.

**Ground Two**: Appellate counsel was ineffective for failure to raise as error the trial courts violation of his right to Due Process under the United States Constitution with its improper jury instruction.

**Supporting Facts**: Violation of my Constitutional rights to Due Process with the trial courts improper jury instruction. The trial judge included the address and declared it an occupied structure as defined by 2909.01 of the Ohio Revised Code. The improper instruction predetermined an element of the offense, failing to leave this essential element to be proven by the State to the jury beyond a reasonable doubt as constitutionally required.

**Ground Three**: Appellate counsel was ineffective for failing to assert ineffective assistance of trial counsel on the grounds that counsel failed to specify the speedy trial violation towards the lesser included offense of burglary only.

**Supporting Facts**: The reasoning behind the trial courts decision to deny the speedy trial violation motion was based upon a pre-trial hearing on Case No. 17- CR-0158. Had counsel been [sic] specific as to the speedy trial violation towards Case No. 17-CR-0235, the trial court would not have denied Petitioner's motion exerting his speedy trial rights. Aforementioned pre-trial hearing was in regards to Case No. 17-CR-0158, and was held six days prior to filing of Case No. 17-CR-0235. The error by counsel was prejudicial as it allowed the Petitioner's right to a speedy trial to be violated.

**Ground Four**: Appellate counsel was ineffective for failing to raise as error the Petitioner's conviction is not supported by sufficient evidence.

---

[1]  At the time Respondent filed the Return of Writ, the Ohio Court of Appeals had not issued a ruling.  A search of the Crawford County Court of Common Pleas docket indicates that it did so on April 27, 2020.

**Supporting Facts**: There was no indictment for the lesser included offense of burglary for which Petitioner was found guilty. The judge provided an instruction on the lesser included offense of burglary and correctly instructed the jury on the offense of burglary that was reflected in R.C. 2911.12(A)(1), but did not instruct on (A)(2) of the same section. However, on the verdict form, the statute portraying the offense were those of both R.C. 2911.12(A)(1) or (2), which was prejudicial. Both of these require proof that Petitioner entered the structure with "purpose to commit therein a criminal offense." The jury found Petitioner not guilty of all other offenses charged. In the absence of guilt for the offenses of Aggravated Robbery and Felonious Assault, it would be impossible for the jury to find Petitioner entered the structure with the intent to commit a criminal offense.

**Ground Five**: Appellate counsel was ineffective for failure to raise as error the "lack of a specific charge" in the verdict form submitted to the jury for deliberations.

**Supporting Facts**: There was no indictment for the lesser included offense of burglary for which Petitioner was found guilty. The judge first informed the jury of this charge during the explanation of the jury instructions, with his instruction saying that burglary was in violation of R.C. 2911.12(A)(1), reading the statute to the jury, but did not instruct on (A)(2). However, both statutes were mentioned when explaining the verdict form, as R.C. 2911.12(A)(1) *or* (2), and both were included on the verdict form and submitted to the jury for deliberations. The word "or" is disjunctive, and does not provide a specific finding of guilt beyond a reasonable doubt of a specific charge as required by the constitution. The trial court's failure to instruct the jury on R.C. 2911.12(A)(2) failed to inform the jury of the elements of this offense, yet requested the jury to determine guilt or innocence of R.C. 2911.12(A)(2).

**Ground Six**: Appellate counsel was ineffective for failing to raise as error the "lack of a specific charge" in the findings of the court within the sentencing entry.

**Supporting Facts**: The sentencing entry reads: "The court find that the defendant was found guilty, by a jury verdict, of a count of burglary in violation of 2911.12(A)(1) or (2) a felony of the second degree." The OHIO REVISED CODE provides 2911.12(A)(1) as a section of burglary and 2911.12(A)(2) as another section of burglary. Both of these sections are different from one another and involve different elements. Both of these sections are to be considered separately and the jury is to be specific as to which charge their finding of guilt is attributed to. 2911.12(A)(1) or (2) is ambiguous and incorrect. The word "or" is disjunctive, and does not provide a specific finding of guilt beyond a reasonable doubt of a specific charge as required by the constitution.

**Ground Seven**: Appellate counsel was ineffective for failure to raise as error the trial court's failure to instruct the jury on all the elements of the lesser included offenses of burglary.

**Supporting Facts**: At no time during the explanation of the jury instructions for the lesser included offense of burglary does the trial court instruct as to the elements of burglary under R.C. 2911.12(A)(2), or the degree of felony in regards to burglary.

**Ground Eight**: The trial court erred in overruling appellant's motion to dismiss for violation of his speedy trial rights.

**Supporting Facts**: I was arrested on June 24, 2017. I was indicted on September 12, 2017 on case no. 17-CR-0235, Aggravated Burglary. I was found guilty of the lesser included offense

11

of burglary on case no. 17-CR-0235. I had been held in lieu of bail since my arrest. Trial started October 19, 2017 and ended October 20, 2017. I never waived my speedy trial rights in this case. There were no motions that would have tolled the time to bring me to trial. The time to bring me to trial exceeded the time permitted by law.

**Ground Nine**: The appellant was denied his constitutional right to effective assistance of counsel when the appellant's trial counsel failed to protect appellant's rights at trial.
　　　**Supporting Facts**: Trial counsel did not investigate or present the most valuable witness to the defense at trial. The failure to present strong evidence that corroborated Mr. Westerfield's defense and rebutted the State's allegation of burglary constituted ineffective assistance. Counsel's failure to subpoena the most valuable evidence and a related witness to the defense is compelling evidence of ineffective assistance of counsel. His actions cannot be termed trial strategy and resulted in the conviction for burglary.

Doc. No. 9-1, pp. 5-17. On April 13, 2020, Respondent filed a Return of Writ (Doc. No. 9) and Westerfield filed a Traverse (Doc. No. 14).

On June 9, 2020, Westerfield filed a motion to dismiss his federal habeas petition in Case No. 1:18-CV-2725, stating that his most recent petition (in the instant case, No. 1:19-CV-1733) "correctly incorporates the necessary issues to be resolved." See Case No. 1:18-CV-2725, Doc. No. 31. The Court granted his motion and terminated his prior habeas case. See Case No. 1:18-CV-2725, Doc. Nos. 33, 33, 34. Thus, Westerfield's nine grounds for relief in his current habeas petition are ripe for review.

## II. Legal Standard

### A. Exhaustion and Procedural Default

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust

applies when state remedies are "still available at the time of the federal petition." *Id*. (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies.  *Id*.

**Exhaustion**.  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g., Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural default**.  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court."  *Id*.  In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural

13

rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error.  785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Id*.  While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**B. Merits Review**

In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause);

or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a

15

claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Analysis

Respondent asserts that Ground 1 is procedurally defaulted and that all Westerfield's grounds fail on the merits.  Doc. No. 9.

### A. Ground 1 is procedurally defaulted and fails on the merits

In Ground 1, Westerfield argues that the trial court violated his due process rights when it instructed the jury that it "cannot return a verdict of not guilty for both" aggravated burglary and the lesser included offense of burglary.  Doc. No. 1, p. 5; Doc. No. 14, p. 6.  Ground 1 is procedurally defaulted because Westerfield should have, but did not, raise the issue on direct appeal.  *See Williams*, 460 F.3d at 806 (a petitioner's failure to present claims to the state courts constitutes a procedural default of those claims and bars federal court review).  Although Westerfield raised this claim as a reason appellate counsel was ineffective in his Rule 26(B) Application, those two claims are "analytically distinct."  *See White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (an ineffective assistance of counsel claim for failing to raise an underlying claim does not preserve the underlying issue as a stand-alone claim for habeas review because the two claims are "analytically distinct.").

Westerfield does not argue cause or prejudice to excuse his procedural default.  He does not show that he suffered a fundamental miscarriage of justice, *i.e.*, that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*

*v. Carrier*, 477 U.S. 478, 496 (1986).  A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Westerfield has not presented such evidence; the undersigned finds that Ground 1 is procedurally defaulted.

Moreover, Ground 1 fails on the merits.  In general, errors in jury instructions do not rise to the level of federal constitutional violations.  The state must prove every element of a criminal offense and a jury instruction violates due process if it fails to meet that requirement.  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979)).  But "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Id*.  Indeed, the circumstances under which a federal court would overturn a state court's determination regarding a requested jury instruction "would need to be extraordinary." *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).  "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge….If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton*, 541 U.S. at 437 (cleaned up).

Here, the trial court instructed the jury, "If you find the state failed to prove beyond a reasonable doubt any one of the essential elements of any or all of the offenses charged in the separate counts in the indictment, your verdict must be not guilty as to such offense or offenses, according it your findings as to the Defendant." Doc. No. 9-1, pp. 915-916.  The court explained that there was a lesser included offense in Westerfield's case, burglary, which the jury would also have an opportunity to consider.  Doc. No. 9-1, p. 916.  The court told the jury that if it found Westerfield not guilty of aggravated burglary or was unable to agree on a verdict, "you will then continue your deliberations to decide whether the State has

proved a [sic], beyond a reasonable doubt, all the essential elements of the lesser included charge of burglary." Doc. No. 9-1, pp. 916-917. The trial court recited the elements of the burglary charge and explained how it differed from aggravated burglary. Doc. No. 9-1, p. 917. The court concluded,

> Now, if you find the State proved beyond a reasonable doubt all of the essential elements of the offense of burglary, your verdict must be guilty. If you find that the State failed to prove beyond a reasonable doubt any of the essential elements of the offense of burglary, your verdict must be not guilty.

Doc. No. 9-1, p. 918. Later, the trial court went over the verdict forms:

> There's also a fourth verdict, and that deals with burglary. Folks, you will not get to this fourth verdict, all right, unless either you find the Defendant not guilty of aggravated burglary, or you're unable to reach a verdict as it pertains to aggravated burglary. All right. Then you would move forward to the charge of burglary, which is a lesser included offense. You cannot return a verdict of guilty for both or a verdict of not guilty for both. You understand that? All right. You would only move on to this if it's a not guilty verdict for aggravated burglary or you can't reach a verdict.
>
> Now, the burglary form says, we, the jury, having found the Defendant not guilty of aggravated burglary or having been unable to reach a verdict on the charge of aggravated burglary, do hereby find the Defendant, Jason Westerfield, either guilty or not guilty, you circle whichever one it is, of burglary on 6/24/17 in violation of Ohio Revised Code Section 2911.12(A)(1) or (2), as he stands charged. And again, that would require that all 12 sign it.

Doc. No. 9-1, pp. 923-924.

Westerfield argues that the trial court directed a verdict of guilty on the burglary charge when it told the jury, "You cannot return a verdict of guilty for both or a verdict of not guilty for both." Doc. No. 14, pp. 6-7. The undersigned disagrees. The trial court told the jury that it could only find Westerfield guilty of burglary if the state proved, beyond a reasonable doubt, all the essential elements of that charge. After the trial court misspoke, it's description of the verdict form made clear to the jury that, if it found Westerfield not guilty of aggravated burglary, it could choose to find him guilty or not guilty of burglary. Therefore, read as a whole, the trial court's jury instructions are unambiguous and there is no reasonable likelihood that the jury applied the burglary instruction in a way that violated the Constitution. *Middleton*, 541 U.S. at 437. Thus, the undersigned finds that, in the alternative, Ground 1 fails on the

18

merits.

**B. Ground 2 fails on the merits**

In Ground 2, Westerfield alleges an ineffective assistance of appellate counsel claim.  The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of appellate counsel claims.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  A petitioner must show that counsel's performance was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, the petitioner would have prevailed on his appeal.  *Id*.  Upon federal habeas review there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeal's decision on the merits of that claim, under AEDPA.  *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

Here, The Ohio Court of Appeals denied Westerfield's Rule 26(B) Application on the merits, finding that Westerfield had failed to show either *Strickland* prong—appellate counsel was not ineffective and Westerfield was not prejudiced by counsel's failure to raise the issues.  Doc. No. 9-1, pp. 269-270.  Although the court did not explain its ruling, this Court still applies AEDPA deference to the state court's determination.  *Harrington*, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

Westerfield argues that appellate counsel was ineffective for failing to argue, on direct appeal, that the trial court gave an improper jury instruction on the burglary charge in violation of his due process rights.  Westerfield submits that the burglary charge included an element that the house he was charged with entering was an "occupied structure" and the trial court "declared the address [of the house] and declared it an occupied structure as defined by 2909.01 of the Ohio Revised Code."  Thus, Westerfield asserts, the trial court "predetermined an element of the offense, failing to leave this essential element to

19

be proven by the State to the jury beyond a reasonable doubt as constitutionally required."  Doc. No. 14, pp. 9-11.  In support, he relies on *United States v. Mentz*, 840 F.2d 315, 324 (6th Cir. 1988).

In *Mentz*, the defendant was charged under a federal statute for bank robbery, which required the government to prove "that the deposits of the financial institution robbed [were] insured by the [Federal Deposit Insurance Corporation] at the time of the robbery."  840 F.2d at 318.  When the trial court instructed the jury, it stated,

> Your [sic] instructed that the First National Bank of Akron and Society National Bank are banking organizations, excuse me, institutions organized and operating under the law of the United States, and each is a bank whose deposits were insured by the Federal Deposit Insurance Corporation at the time of the offenses alleged in the indictment.

*Id*. at 318-319.  The Sixth Circuit, on direct appeal, found that the jury instruction violated the defendant's constitutional rights.  The Court explained,

> There can be little doubt that a trial judge commits error of constitutional magnitude "when he instructs the jury as a matter of law that a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding." [*United States v. White Horse*, 807 F.2d 1426, 1429 (8th Cir.1986)] (citation omitted). This is tantamount to a directed verdict for the prosecution, a result that is condemned by the Constitution. *Martin Linen Supply Co*., 430 U.S. at 572–73, 97 S.Ct. at 1355; *United Brotherhood of Carpenters & Joiners of America*, 330 U.S. at 408, 67 S.Ct. at 782.

*Id*. at 320.  Because the trial court's "conclusive statement left no room for the jury to believe otherwise," the Court found that the trial court cast itself in the role of trier of fact "and directed a verdict on an essential element of the bank robbery charge….relieving the government of its burden of proving, beyond the jury's reasonable doubt, that the accused committed the crimes charged."  *Id*.

Here, the trial court did not make a "conclusive statement" that the house Westerfield entered was an occupied structure, an element of the burglary charge.  The trial court instructed the jury on the elements of aggravated burglary:

> Before you can find the Defendant guilty, the State must prove, beyond a reasonable doubt, that on or about the 24th day of June, 2017, the Defendant, by force, stealth, or deception, trespassed in 515 North Pearl Street, Crestline, Ohio, an occupied structure, as defined in Section 2909.01 of

20

the Revised Code, or a separately secured or separately occupied portion of an occupied structure, when another person, other than the accomplice of the offender, is present, with the purpose to commit therein a criminal offense.

Doc. No. 9-1, p. 913.  Then it defined "occupied structure":

Occupied structure means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or any other structure, vehicle, or shelter, or any portion thereof to which the following applies: It's maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present. At the time it is occupied as a permanent or temporary habitation of any person, whether or not any person's actually present, at the time it's specifically adapted for an overnight accommodation of any person, whether or not the person is actually present. And at the time any person was present or likely to be present in it.

Doc. No. 9-1, pp. 914-915.  Next, the trial court explained that the state must prove all the elements of

the charges:

Now, guilty. If you find the State proved beyond a reasonable doubt all the essential elements of any one or all of the offenses charged in separate counts in the indictment, your verdict must be guilty as to such offense or offenses, according to your findings of the Defendant. If you find the State failed to prove beyond a reasonable doubt any one of the essential elements of any or all of the offenses charged in the separate counts in the indictment, your verdict must be not guilty as to such offense or offenses, according it your findings as to the Defendant.

Doc. No. 9-1, pp. 915-916.  Then the trial court gave the burglary instruction:

Now, before you can find the Defendant guilty, the State must prove beyond a reasonable doubt that on the 24th day of June, 2017, the Defendant did, by force, stealth, or deception, trespass at 515 North Pearl Street, Crestline, Ohio, an occupied structure, as defined in Section 2909.01 of the Ohio Revised Code, or a separately secured or separately occupied portion of an occupied structure when another person, other than the accomplice of the offender, is present with the purpose therein to commit a criminal offense.

\*\*\*

Now, if you find the State proved beyond a reasonable doubt all of the essential elements of the offense of burglary, your verdict must be guilty. If you find that the State failed to prove beyond a reasonable doubt any of the essential elements of the offense of burglary, your verdict must be not guilty.

Doc. No. 9-1, pp. 917-918.

Viewing "the context of the overall instructions and trial record as a whole," as this Court must

do, Westerfield has not shown "that the challenged instruction 'by itself so infected the entire trial that

21

the resulting conviction violates due process.'" *Hanna v. Ishee*, 694 F.3d 596, 620–21 (6th Cir. 2012)

(citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). Westerfield reads the trial court's burglary

instruction as stating that the house on North Pearl Street was, as a matter of law, an occupied structure.

But the trial court did not instruct, as a matter of law, that the house on North Pearl Street was an

occupied structure. The addition of the address of the structure Westerfield was charged to have

trespassed in did not turn the list of elements into a statement of law. It cannot be said that the trial court

made a "conclusive statement [that] left no room for the jury to believe otherwise." *C.f. Mentz*, 840 F.2d

at 320. Thus, the undersigned finds that the Ohio Court of Appeals' decision denying Westerfield's

claim that appellate counsel was ineffective for failing to raise this issue on direct appeal was not

contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *White*, 572

U.S. at 419.

**C. Grounds 3 and 8 fail on the merits**.

Grounds 3 and 8 are related speedy trial claims. To recap: Westerfield was indicted on July 11,

2017, for felonious assault and aggravated robbery in Case No. 17-CV-0158. *Westerfield*, 2018 WL

2670943, at *2. On September 6, 2017, the day before trial, the parties made an agreed motion to

continue trial to October 19, 2017 based on the evaluation of new evidence, and Westerfield also

submitted a written speedy trial waiver. *Id*. On September 12, 2017, a second indictment was filed

against Westerfield alleging one count of aggravated burglary arising out of the June 24, 2017 incident,

Case No. 17-CV-0235. *Id*. Westerfield filed a revocation of his speedy trial waiver on September 14 and

the two cases were consolidated for trial on September 18. *Id*. The case proceeded to trial on October

19, 2017, and Westerfield's attorney made a motion to dismiss on speedy trial grounds, which the court

denied. *Id*.

**Ground 8**: In Ground 8, Westerfield argues that, although he had waived his speedy trial right in

22

Case No. 17-CR-0158, he had not waived it in Case No. 17-CR-0235, and his trial commenced 27 days after his speedy trial time expired.  Doc. No. 1, p. 15; Doc. No. 14, p. 27.  Thus, he alleges, his speedy trial right was violated in Case No. 17-CR-0235.

The Sixth Amendment to the United States Constitution guarantees a defendant a "speedy and public trial."  U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972).  In *Barker*, the Supreme Court refused to establish a set number of days constituting a violation of the speedy trial right.  *Id*. at 523.  Instead, the Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of the delay between the date of indictment or arrest (whichever is earlier) and the date of trial.  *Id*. at 530; *United States v. Marion*, 404 U.S. 307, 320-21 (1971).  The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992).

Ohio courts evaluate the state speedy trial provisions found in R.C. § 2945.71 *et seq*., which are considered coextensive with the Sixth Amendment speedy trial requirement.  *Brown v. Bobby*, 656 F.3d 325, 330 (6th Cir. 2011) (citing *State v. O'Brien*, 516 N.E.2d 218, 220 (Ohio 1987) and *State v. Pachay*, 416 N.E.2d 589, 591 (Ohio 1980)).  R.C. § 2945.71 provides that a person shall be brought to trial within 270 days after arrest, and that, for purposes of computing time, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  § 2945.71(C)(2) & (E).  Section 2945.72 lists instances in which the time limit for bringing an accused to trial may be tolled, including "The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."  § 2945.72(H).  "[A]ny time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those

provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the

factors laid out in *Barker*." *Brown*, 656 F.3d at 331.

Because AEDPA deference applies to a state appellate court's speedy trial analysis on federal

habeas review, a court:

> need not go into too great of depth in considering [the *Barker*] factors, but instead should
> simply ascertain whether the state court's decision constituted an unreasonable application of
> clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). A decision can "unreasonably apply"
> federal law if "the state court identifies the correct governing legal rule from [Supreme Court]
> cases but unreasonably applies it to the facts of the particular state prisoner's case," or if "the state
> court either unreasonably extends a legal principle from [Supreme Court] precedent to a new
> context where it should not apply or unreasonably refuses to extend that principle to a new
> context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. This court is not
> concerned with whether the state court ruled erroneously or incorrectly, but rather with whether
> the state court decision was "objectively unreasonable." *See Lordi v. Ishee*, 384 F.3d 189, 195
> (6th Cir. 2004); *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004); *McAdoo v. Elo*, 365
> F.3d 487, 493 (6th Cir. 2004).

*Brown*, 656 F.3d at 332-333.

Here, the Ohio Court of Appeals considered Westerfield's speedy trial claim as follows:

{¶ 18} Revised Code 2945.71(C)(2) provides that a person against whom a felony charge is
pending shall be brought to trial within 270 days after arrest. If an accused is in jail in lieu of bail
solely on the pending charge, each day counts as three days for purposes of the speedy-trial
calculation. R.C. 2945.71(E). Westerfield argues that he was not brought to trial until between
117 and 119 days after his arrest.

{¶ 19} Notably, Westerfield's speedy trial claim was directly addressed by the trial court prior to
the commencement of his trial.

> THE COURT: * * * [W]hat happened in this case is speedy trial was set for September
> 21st. The Defendant, in open court, with you and everyone in here, said that they needed a
> continuance because of new evidence involving jail conversations.

> [DEFENSE COUNSEL]: Yes, Your Honor.

> THE COURT: The parties agree[d] to a continuance to 10/19. All right. That is when
> speedy trial would expire, would be the date of the trial. We have a chance, we have to
> take you to trial there. You don't get to file a motion to continue and waive speedy trial,
> get a new trial date, and then as soon as you think the time has expired, go back and
> revoke it. That's no[t] how it works. So in that regard, it's denied.

24

* * *

THE COURT: In addition, * * * this wasn't a general waiver. It was a continuance, which tolls the speedy trial time all the way to the 19th * * * so I'm going to deny the motion. (Tr. at 5–7).

{¶ 20} After reviewing the record, we agree with the trial court. Westerfield had a trial date within the original speedy trial timeframe. He requested that the original trial date be continued so that his attorney could examine the numerous jailhouse phone calls made between Westerfield and Caudill. Westerfield also then waived his speedy trial time and requested that the trial be continued to a specific trial date in October, which was the date the trial was actually held.

{¶ 21} While it is true that Westerfield filed a motion to "revoke" his speedy trial waiver, he was still reasonably brought to trial in an expedient manner. As the trial court noted, if we were to rule in Westerfield's favor in this case, defendants would be able to easily manipulate and subvert speedy trial statutes by filing waivers, agreeing to continuances, then revoking the waiver when it would be most inconvenient for the court and impractical to get a sudden, immediate trial date.

{¶ 22} Notwithstanding this point, we also would note, as the State points out, that Westerfield's purported speedy trial calculation does not include *any* applicable tolling periods under R.C. 2945.72 such as his discovery demand, his motion in limine, and any time that would be attributed to his motion to continue before the ultimate revocation. Factoring in all these days, there is no clear indication that Westerfield's speedy trial rights were violated.

{¶ 23} Westerfield argues that in denying his motion to dismiss the trial court erroneously relied on the Supreme Court of Ohio's decision in *State v. Blackburn*, 118 Ohio St.3d 163, 2008–Ohio–1823. In *Blackburn*, the court held that, "In calculating the time within which a criminal defendant must be brought to trial under R.C. 2945.71, periods of delay resulting from motions filed by the defendant in a previous case also apply in a subsequent case in which there are different charges based on the same underlying facts and circumstances of the previous case." Westerfield contends that the trial court actually should have applied *State v. Adams*, 43 Ohio St.3d 67 (1989), wherein the Supreme Court of Ohio held, "When an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." Even if we disregarded *Blackburn*, we could not find that *Adams* compelled a different result where Westerfield agreed to a continuance for his own benefit so that his counsel could analyze evidence and be prepared for trial, then tried to later revoke a speedy trial waiver. Taking all these issues into consideration, Westerfield's first assignment of error is not well-taken, and it is overruled.

*Westerfield*, 2018 WL 2670943, at *3-4.

Westerfield maintains that he did not file any pre-trial motions that would have tolled the speedy trial time in Case No. 17-CR-0235 and argues that the state court should have applied the rule in *State v.*

25

*Adams*, which dealt with waiver.  Doc. No. 14, pp. 25, 27.  But the Ohio Court of Appeals agreed with the trial court that Westerfield had agreed to a continuance, which is different from waiver, and that the continuance tolled his time on both cases to the date of trial, October 19, 2017.[2]  Moreover, the Ohio Court of Appeals considered the length of the delay (117-119 days); the reason for the delay (to allow defense counsel to review 180 telephone calls totally 14 hours of conversation between Westerfield and the state's witness); Westerfield's assertion of his right to a speedy trial (ill-timed); and whether he was prejudiced (no).  *Westerfield*, 2018 WL 2670943, at *3-4.  Thus, the court of appeals considered the *Barker* requirements when addressing Westerfield's speedy trial argument.  407 U.S. at 530; *Brown*, 656 F.3d at 331.  Westerfield has not shown that that decision was contrary to, or an unreasonable application of, Supreme Court precedent, and the undersigned finds that Ground 8 fails on the merits.

**Ground 3**.  In Ground 3, Westerfield argues that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct appeal based on counsel's failure to raise the speedy trial issue.  Doc. No. 1, p. 8; Doc. No. 14, p. 11.

First, even though trial counsel did not cite Case No. 17-CV-0235 when he argued the speedy trial issue with respect to the second indictment, the trial court did.  The trial court discussed Westerfield's speedy trial right as to the second indictment, Case No. 17-CV-0235, and denied his motion to dismiss on that ground.  The trial court stated,

> In addition, there was never a formal motion made for this, but there was a new charge. In this case, the aggravated burglary charge. I reviewed the law in this case and I explained it in great detail when we spoke last time….The new charge goes all the way back to the date of the old charge, which means that that new charge would also expire on September 21st, 2017. However, this wasn't a general waiver. It was a continuance, which tolls the speedy trial time all the way to the 19th. So reading the *Blackburn* case, which is a State Supreme Court case, based on all the other case law—I'm not going to go through it right now—that pertains to speedy trial, as long as he has his trial today, there's not a speedy trial problem. And he is having his trial today, so I'm going to deny the motion. All right.

---

[2]  The state cases Westerfield cites in support of Ground 3 in his Traverse (Doc. No. 14, pp. 12-14) are cases involving waivers, not continuances, and do not show that the Ohio Court of Appeals' decision was contrary to state or federal law.

Doc. No. 9-1, p. 590. Because the trial court considered, and rejected, a motion to dismiss the second indictment, Case No. 17-CV-0235, on speedy trial grounds, Westerfield was not prejudiced by trial counsel's failure to raise it. Moreover, as described above, the Ohio Court of Appeals found that the trial court did not violate his speedy trial rights. Thus, an ineffective assistance of trial counsel claim for failing to argue the point would have failed, and appellate counsel could not be ineffective for failing to raise it. *Burgess v. Booker*, 526 F. App'x 416, 433 (6th Cir. 2013) (appellate counsel is not ineffective for failing to raise issues on direct appeal that would not have succeeded, citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

In sum, the undersigned finds that Grounds 3 and 8 fail on the merits.

**D. Ground 4 fails on the merits**

In Ground 4, Westerfield argues that appellate counsel was ineffective for failing to raise, on direct appeal, a sufficiency of the evidence argument. Doc. No. 1, p. 9.[3] He contends that, because the jury found him not guilty of felonious assault and aggravated robbery, it stands to reason that the jury could not have found that he entered the house "with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense." Doc. No. 14, p. 17.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Under this standard, deference is due the trier of fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it

---

[3] In Ground 4, Westerfield also argues that there an error in the verdict form. The undersigned considers that argument in Ground 5, *infra*.

27

made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").  On federal habeas review, an additional layer of deference applies.  *Brown*, 567 F.3d at 205; *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Here, there was sufficient evidence from which the jury could find that Westerfield entered Caudill's house "with purpose to commit" a criminal offense.  Caudill testified that on June 23, 2017, she had a male friend named Brooks visiting her house.  Doc. No. 9-1, pp. 760-764.  That night, Westerfield, whom she had an ongoing a relationship with, called her and Caudill told him she had company, which upset him.  Doc. No. 9-1, pp. 773-775.  Westerfield told Caudill she was "forcing [his] hand" and drove to her house.  Doc. No. 9-1, p. 776.  She told him not to come and he responded that her company had better be gone when he got there.  Doc. No. 9-1, p. 776.  He texted, "All I know is I'm showing up, and where it goes from there, I've already accepted what it may be.  From getting beat up to going to jail, for making an example out of who the fuck ever is there, I'm coming."  Doc. No. 9-1, p. 778.  He sent her photos and videos of the road as he drove to her house and sent her a photo of her truck parked in her

own driveway when he arrived at her house.  Doc. No. 9-1, pp. 779-780, 782.  After he sat in his vehicle in the driveway playing loud music, blowing his horn, and calling and texting Caudill, she went outside to meet him.  Doc. No. 9-1, pp. 783-784.  They had a conversation; Caudill told him Brooks was in the house and Westerfield said that Brooks needed to leave.  Doc. No. 9-1, p. 787.  Caudill told him not to go inside her house and Westerfield proceeded to go inside her house while she tugged on his shirt sleeve and grabbed his arm and continued to tell him not to go inside the house.  Doc. No. 9-1, pp. 788-789.  That is sufficient evidence to support the jury's finding that Westerfield entered Caudill's house "with purpose to commit" a criminal offense (an assault on Brooks) and, therefore, was guilty[] burglary.

Thus, the undersigned finds that the Ohio Court of Appeals' denial of Westerfield's ineffective assistance of appellate counsel claim for failing to raise, on direct appeal, a sufficiency of the evidence argument was not unreasonable because such a claim would not have been successful. *Burgess*, 526 F. App'x at 433.  Accordingly, the undersigned finds that Ground 4 fails on the merits.

## E. Ground 5 fails on the merits

In Ground 5, Westerfield argues that appellate counsel was ineffective for failing to raise, on direct appeal, an argument that the verdict form did not have a specific charge.  Doc. No. 1, p. 11.  He explains that the trial court did not cite the burglary statute when instructing the jury and read the elements of the statute set forth in § 2911.12(A)(l).  Then, he alleges, the trial court cited two provisions of the burglary statute, § 2911.12(A)(l) and (2), when going over the verdict forms with the jury and the verdict forms included a citation to § 2911.12(A)(l) and (2).  Thus, he argues, it was error for the trial court to read the instruction in § 2911.12(A)(l) but provide a verdict form that listed both § 2911.12(A)(l) and (2).[4]  Doc. No. 1, p. 11; Doc. No. 14, pp. 20-22.

The verdict form provided to the jury states,

---

[4]  The two provisions differ in the description of an "occupied structure."  Section 2911.12(A)(l) states "occupied structure" and § 2911.12(A)((2) states "occupied structure that is a permanent or temporary habitation of any person[.]"

> We, the Jury, having found the Defendant not guilty of Aggravated Burglary, or having been unable to reach a verdict on the charge of Aggravated Burglary, do hereby find the Defendant, JASON L. WESTERFIELD, GUILTY / NOT GUILTY of Burglary on 6/24/17, in violation of Ohio Revised Code 2911.12(A)(l) or (2) as he stands charged.

Doc. No. 9-1, p. 231.

Westerfield has not shown that the addition of § 2911.12(A)(2) on the verdict form for burglary violated his constitutional rights. The trial court instructed the jury on all the elements of burglary found in § 2911.12(A)(1). Doc. No. 9-1, p. 917. The jury found him guilty. As explained above, there was sufficient evidence for the jury to find Westerfield guilty. Thus, the trial court's failure to read § 2922.12(A)(2) was not error. *See, e.g., State v. Gardner*, 889 N.E.2d 995, 1003 (Ohio 2008) ("[A] defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged."); *see also Musacchio v. United States*, 577 U.S. 237, 243 (2016) (when a jury instruction sets forth all the elements of the charged crime but adds an element, a sufficiency challenge should be assessed against the elements of the charged crime, "not against the erroneously heightened command in the jury instruction.").

The undersigned finds that the Ohio Court of Appeals' decision denying Westerfield's ineffective assistance of appellate counsel claim for failing to raise, on direct appeal, a claim that the verdict form included an additional provision of the burglary statute was not unreasonable because such a claim would not have been successful. *Burgess*, 526 F. App'x at 433. Accordingly, the undersigned finds that Ground 5 fails on the merits.

**F. Ground 6 fails on the merits**

In Ground 6, Westerfield argues that appellate counsel was ineffective for failing to raise, on direct appeal, an argument that the sentencing entry did not have a specific charge. Doc. No. 1, p. 12. He alleges that the trial court's sentencing entry referenced his guilt on the count of burglary "in violation of 2911.12(A)(l) or (2) a felony of the second degree." Doc. No. 14, p. 22; Doc. No. 9-1, p. 21. He asserts,

30

"the trial courts erroneous version of the Ohio Revised Code and presenting the jury with the same language on the verdict form for their deliberations was prejudicial as it allowed him to be convicted of a crime absent the proof beyond a reasonable doubt of every fact necessary to constitute that crime, being O.R.C. 2911.12(A)(2)." Doc. No. 14, p. 23.

The trial court's sentencing entry stating that Westerfield was found guilty of burglary in violation of 2911.12(A)(l) or (2) is accurate. For the reasons explained in the discussion of Ground 5, the undersigned finds that the Ohio Court of Appeals' decision denying Westerfield's ineffective assistance of appellate counsel claim for failing to raise, on direct appeal, a claim that the sentencing entry did not state a specific charge was not unreasonable because such a claim would not have been successful, *Burgess*, 526 F. App'x at 433, and Ground 6 fails on the merits.

**G. Ground 7 fails on the merits. To the extent Westerfield expands Ground 7 in his Traverse, any such claim is improper, procedurally defaulted, and fails on the merits.**

In Ground 7, Westerfield argues that appellate counsel was ineffective for failing to raise, on direct appeal, an argument that the trial court failed to instruct the jury on all the elements of the lesser included offense of burglary under § 2911.12(A)(2). Doc. No. 1, p. 14. That claim is the same argument Westerfield raised in Ground 5, and the undersigned finds that it fails for the same reason. His assertion that the trial court did not specify the degree of felony in the burglary instruction, Doc. No. 1, p. 14; Doc. No. 14, p. 24, is not supported by legal authority. Thus, he has not shown that the Ohio Court of Appeals' decision denying his ineffective assistance of appellate counsel claim for failing to raise, on direct appeal, a claim that the trial court did not specify the degree of felony in the burglary instruction, is unreasonable.

In his Traverse, Westerfield complains that the trial court did not "instruct the jury as to the elements of FORCE, STEALTH, DECEPTION, TRESPASS, PURPOSE and CRIMINAL OFFENCE as they pertain to the Aggravated Burglary charge or the lesser included offense of burglary." Doc. No. 14,

31

pp. 18, 20, 24 (emphasis in original).  Because Westerfield did not present this argument in his Petition, the Court is not required to address it.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (an argument first presented in the petitioner's traverse was not properly before the district court and the district court did not err in declining to address it).  Moreover, Westerfield did not raise this argument as a reason appellate counsel was ineffective in his Rule 26(B) Application.  *See McMeans*, 228 F.3d at 681 (a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts).  Thus, his argument is procedurally defaulted and he has not alleged cause or prejudice to excuse the default or shown actual innocence.

Moreover, his argument is belied by the record.  The trial court cited all those words when it read the aggravated burglary instruction and the lesser included burglary instruction.  Doc. No. 9-1, pp. 913, 917.

The undersigned finds that Ground 7 fails on the merits, and, to the extent Westerfield seeks to expand Ground 7 is his traverse, such a claim is improper, procedurally defaulted, and fails on the merits.

## H. Ground 9 fails on the merits

In Ground 9, Westerfield argues that he was denied the right to effective assistance of trial counsel because counsel failed to protect his rights at trial.  Doc. No. 1, p. 16.  He asserts that trial counsel did not "investigate or present the most valuable witness to the defense at trial" and that the failure to present "strong evidence that corroborated Mr. Westerfield's defense and rebutted the State's allegation of burglary constituted ineffective assistance."  Doc. No. 1, p. 16.  In his Traverse, he identifies the witness—Caudill—and the evidence—an affidavit Caudill gave to Westerfield's counsel, a photograph of Westerfield's vehicle, and a bottle of Crown Royal, which was alleged to have been stolen by Westerfield "and was to have been a motivating factor in support of the lesser included offense of burglary charges."  Doc. No. 14, p. 29-30.

The Ohio Court of Appeals considered this claim on direct appeal:

{¶ 24} In Westerfield's second assignment of error, he argues that he received ineffective assistance of counsel. Specifically, he contends that trial counsel was deficient for failing to deliver on promises that he made during opening statement. Westerfield focuses strongly on trial counsel's failure to question Caudill more heavily about the whereabouts of the Crown Royal bottle that Westerfield purportedly took from Caudill's residence.

### Standard of Review

{¶ 25} "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him." *State v. Hernandez*, 3d Dist. Defiance Nos. 4–16–27, 28, 2017–Ohio–2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson*, 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶ 26} We note that a tactical decision by trial counsel, who as a licensed attorney is presumed to be competent, is not by itself enough to show ineffective assistance of counsel simply because the strategy did not result in an acquittal. *State v. Clatyon*, 62 Ohio St.2d 45, 48–49 (1980); *State v. Timm*, 3d Dist. Seneca No. 13–11–23, 2012–Ohio–410, ¶ 31.

### Analysis

{¶ 27} In this case, Westerfield contends that his trial counsel was ineffective primarily for failing to ask Caudill about bringing the bottle of Crown Royal to defense counsel's office that Westerfield had allegedly stolen well after the incident in question, establishing that Westerfield had not taken the bottle. Westerfield argues that if his trial counsel would have pressed this point, as he indicated he would in his opening statement, Westerfield would not have been convicted of Burglary.

{¶ 28} Contrary to Westerfield's arguments, the jury was informed that to convict Westerfield of Burglary the jury had to find that Westerfield by force, stealth, or deception trespassed in Caudill's home (an occupied structure) when another person was present *with the purpose to commit a criminal offense*. Westerfield seems to be under the impression that to be convicted of Burglary he had to have the purpose to commit a *theft* offense, such as taking the Crown Royal bottle. However, trespassing in the occupied structure while Brooks was present results in a Burglary where Westerfield had the intent to commit *any* criminal offense.

{¶ 29} When Westerfield was on his way to Caudill's residence, he indicated through his messages threats of violence to Brooks. Specifically, he stated, "He can stay there [C]rystal.., all I kno [sic] is I'm showing up and where it goes from there.., I've already accepted what it may be * * * From getting beat up to going to jail for making a [sic] example outta who the fuck ever is there.., I'm coming..." (State's Ex. 6). Combining this with Brooks's testimony regarding the

33

events in question, the jury could readily convict Westerfield of having the intent to commit an assault on Brooks at the residence.

{¶ 30} Moreover, both defense counsel and the State indicated in their opening arguments that they did not know what Caudill was going to say on the witness stand because she had changed her story multiple times and she had been in significant contact with Westerfield over the phone. Thus we can find no ineffective assistance of counsel here and even if we did there is no resulting prejudice. For these reasons Westerfield's second assignment of error is overruled.

*Westerfield*, 2018 WL 2670943, at *4-5.

In his Traverse, Westerfield maintains that Caudill provided an affidavit to counsel in which she "made no mention of Petitioner not having permission to enter her home, or of being the victim of a robbery, or of witnessing an assault" and that that affidavit contradicted what she had told the police. Doc. No. 14, p. 29. But the Ohio Court of Appeals explained that Caudill had changed her story multiple times, and Caudill's different statements were explored at trial and were heard by the jury. *See, e.g.*, Doc. No. 9-1, pp. 793-802. Moreover, Westerfield's counsel did ask Caudill about the affidavit that she had drafted in his office. *See* Doc. No. 9-1, pp. 816-821. Westerfield does not show that the Ohio Court of Appeals' finding that trial counsel was not ineffective for failing to cite more instances of Caudill's inconsistent statements was contrary to or an unreasonable application of the *Strickland* standard.

Westerfield's other arguments are unavailing. He reiterates his argument that Caudill brought the bottle of Crown Royal to his counsel's office (Doc. No. 14, pp. 29, 30) but does not explain how that fact matters when the Ohio Court of Appeals found that the jury could find that Westerfield committed burglary whether he took the bottle or not. He complains that counsel did not present the jury with a photo showing the driver's side door of his car, which, he states, is "exonerating evidence." Doc. No. 14, pp. 29-30. He explains that his car door was broken and he could not open it from the inside. Therefore, he asserts, it proves that Caudill opened his car door for him to allow him to exit, which is not an act consistent with being the victim of a crime. Doc. No. 14, pp. 29-30. But Westerfield's inability to open his driver's side door did not prevent him from opening another door to exit his vehicle. Even if Caudill

34

did open his car door for him, that act did not give him permission to enter her house.  Thus, Westerfield

has failed to show that that the Ohio Court of Appeals' decision "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fair-minded

disagreement."  *Harrington*, 562 U.S. at 103.  The undersigned finds that Ground 9 fails on the merits.

### IV. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED in part and

DENIED in part.


Date:  March 21, 2022                    *s/ Jonathan Greenberg*
                                         Jonathan D. Greenberg
                                         United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).**